[Civ. No. 14236. Second Dist., Div. One. June 14, 1944.]

THE PEOPLE, Appellant, v. MARSHALL B. ROATH et al., Defendants; STANDARD ACCIDENT INSUR-ANCE COMPANY (a Corporation) et al., Respondents.

Robert W. Kenny, Attorney General, H. H. Linney, Assistant Attorney General, John L. Nourse and Daniel N. Stevens, Deputies Attorney General, for Appellant.

Paul Nourse and Jennings & Belcher for Respondents.

WHITE, J.—The People of the State of California commenced this action upon bonds conditioned for the payment by defendant Roath "of all license taxes, penalties and other obligations of said principal arising out of" the State Motor Vehicle Fuel License Tax Act (Stats. 1923, p. 571, as amended; Deering's Gen. Laws, 1937, Act 2964). This cause was before us once before in a proceeding wherein respondents sought a dismissal of the appeal and which motion was denied. (*People* v. *Roath,* 62 Cal.App.2d 241 [144 P.2d 648].) Reference is hereby made to such decision for a detailed statement of the factual background surrounding this litigation. Insofar as this appeal is concerned, suffice it to say that by their complaint herein the People sought to recover upon the aforesaid bonds for accrued delinquent taxes and penalties in the amount of $25,118.76 and also, in the same action, to recover expense items totaling $2,262.60 incurred by the State Controller in seizing defendant Roath's distributing plant; preserving and advertising the same for sale as authorized by section 4 of the above mentioned act, but which sale was not consummated for reasons set forth in *People* v. *Roath, supra.*

Paragraph VI of plaintiff's complaint, which had to do with the attempted collection of the expense items last referred to, was stricken and the cause proceeded to trial upon the sole issue of the delinquent taxes and penalties, resulting in a judgment in favor of plaintiff for the full amount thereof. This judgment was satisfied of record.

This appeal is prosecuted by plaintiff from the aforesaid judgment, and "specifically from that portion of said judgment which, by limiting plaintiff's recovery to the sum of $25,118.76, denied plaintiff's recovery of the additional sum of $2,262.60 prayed for in its complaint."

Paragraph VI of plaintiff's complaint, with which we are solely concerned, reads as follows:

"That said taxes and penalties not being paid, the Controller of the State of California, as required by and pursuant to the provisions of said Act, endeavored to collect the same by seizure and sale of assets of said defendant Marshall B. Roath, but that said efforts were unavailing and said Controller was thereafter ordered and required by the District Court of the United States for the Southern District of California, Central Division, in the Matter of Marshall Roath, Bankrupt, No. 35,760-C, to turn over to Hubert F. Laugharn, as trustee in bankruptcy of said estate, all property both real and personal theretofore seized or levied upon by him and it was further ordered by said Court that all of such assets be administered in the above entitled estate under and in accordance with the terms of the National Bankruptcy Act.

"That said Controller in seizing said assets, as aforesaid and in advertising the same for sale as authorized by said Act incurred costs and expenses in the amount of $2,262.60, no part of which has been repaid to plaintiff. That pursuant to the provisions of said Act there is now due and owing from defendant Marshall B. Roath to plaintiff, in addition to all other amounts herein mentioned, the said sum of $2,262.60."

The pertinent language of the aforesaid section 4 of the act reads:

"The Controller shall seize any property, real or personal, used by such distributor in the operation of his business, and thereafter sell at public auction such property so seized, or a sufficient portion thereof to pay the tax due hereunder, together with any penalty or penalties imposed hereby for such delinquency, *and any and all costs that may have been incurred on account of such seizure and sale. . . .*" (Italics supplied.)

Said section also contains the following provisions:

"The Controller must also immediately transmit notice of such delinquency to the Attorney General who shall at once proceed to *collect all sums due to the State from any such distributor* hereunder *by bringing suit* against the necessary parties to effect forfeiture of the bond or bonds of the distributor or of the money or securities deposited by the distributor with the State Treasurer in accordance with the terms

of section 2 of this act, *reducing any deficiency to judgment against the distributor.*

"It is expressly provided that the foregoing remedies of the State shall be cumulative and that no action taken by the Controller or the Attorney General shall be or be construed to be an election on the part of the State or any of its officers to pursue any remedy hereunder to the exclusion of any other remedy hereunder for which provision is made in this act. In any suit brought to enforce the rights of the State hereunder the assessment roll prepared by the State Board of Equalization pursuant to section 6 of this act, or a copy of so much thereof as is applicable in such suit, duly certified by the Controller showing unpaid license taxes assessed against any distributor, shall be prima facie evidence of the assessment of the license tax, the delinquency thereof, *the amount of the license tax, penalties and costs due and unpaid to the State,* that the distributor is indebted to the people of the State of California in the amount of such license tax and penalties therein appearing unpaid and that all the forms of law in relation to the assessment and levy of such license tax have been fully complied with by all persons required to perform administrative duties under this act." (Italics supplied.)

▉ It must be conceded as a matter of law that respondents, as sureties on defendant Roath's bond, cannot be held liable for any amount for which their principal Roath is not legally liable. Therefore, the sole question presented for determination upon this appeal may be thus stated: Was Roath, the principal on the bonds sued upon, liable, other than from the proceeds of a sale of his distributing plant, for the costs of seizing, preserving and attempting to sell such property; or in other words, were such costs payable only out of proceeds realized from a sale of the seized property? The bonds here in question were executed pursuant to the provisions of section 2 of the Motor Vehicle Fuel License Tax Act, wherein it is provided that, prior to the granting of any license authorizing a person, firm, association or corporation to engage in business as a distributor, the State Board of Equalization must require the filing of a bond conditioned upon faithful performance of all the requirements of the act and "expressly providing for the payment of all license taxes, penalties and other obligations of such person . . . *arising out of this Act.*" (Italics added.) Thus we find in the bonds here under consideration the following provision:

"If the above bounden principal shall well and truly comply with all the provisions of said Act and amendments thereto, and in particular pay all license taxes, penalties and other obligations of said principal *arising out of said Act*, then this obligation shall be null and void; otherwise to remain in full force and effect." (Italics added.)

We are persuaded that with reference to the liability of defendant's sureties it may fairly be stated that such liability is dependent upon whether the cost of seizure incurred by the State Controller in pursuing the remedy provided by section 4 of the act is an "obligation" of the taxpayer "arising out of said Act." If the seizure cost is such an "obligation," then, according to the very terms of the bonds, the sureties thereon must be held liable.

In support of their claims that the costs incurred by the State Controller in seizing, preserving and selling the distributor's property may be satisfied only out of the proceeds of such sale, respondents urge that section 4 of the act confers upon the State two cumulative remedies.

First: the right to enforce its lien upon the taxpayer's property by seizing such property and selling it at public auction. Then after such sale the State may apply the proceeds thereof to the payment of "the tax due . . . together with any penalty or penalties . . . , and any and all costs that may have been incurred on account of seizure and sale . . . ."

Second: To bring a suit against the distributor and the sureties upon his bond to collect all sums due to the State from such distributor.

In further support of their contention that in the event of a sale respondent sureties are not liable, our attention is directed by them to the fact that section 4 provides that in any such suit brought by the State, the assessment roll "prepared by the State Board of Equalization shall be *prima facie* evidence of three things: (1) 'of the assessment of the license tax, the delinquency thereof, the amount of license tax, penalties and costs due and unpaid to the State'; (2) *'that the distributor is indebted to the people of the State of California in the amount of such license tax and penalties therein appearing unpaid';* and (3) that all forms of law have been complied with." Respondents argue that the portion of section 4 just quoted indicates that the Legislature did not intend to create any liability whatsoever upon the part of the

distributor, but thereby intended only to prescribe the procedure through which the liability of the taxpayer created by other portions of the act might be enforced. Respondents' argument in this regard is thus epitomized by them in their brief:

"Two remedies are given to the State to enforce payment of the *tax* and *penalties*. It may pursue either or both of these remedies, but each remedy is separate and apart from the other.

"If the State chooses to enforce its remedy of seizure and sale it must, in addition to seizing the property, sell it, and upon the sale may recover out of the proceeds thereof its cost of pursuing that remedy, and the portion of the statute granting this remedy is not rendered inoperative by the failure to impose upon the taxpayer personal liability for costs incurred in an abortive attempt to pursue this remedy, that is, an attempt to pursue it which does not result in a sale through which the State can be reimbursed for costs incurred by it in partially pursuing this remedy. The remedy given is seizure *and* sale, and *not* seizure *without sale* or sale without seizure. The purpose of this first remedy was to facilitate foreclosure of the lien for taxes and penalties granted to the State and the imposition of that lien did not, in itself, create any personal obligation on the part of the taxpayer to pay anything which he was not otherwise liable to pay. (Civ. Code, sec. 2890.)"

However, we are impressed that respondents' argument is effectively and completely answered by the sixth paragraph of section 4 (Deering's Gen. Laws, 1937, Act 2964, p. 1409), which, after stating that the remedies afforded the State shall be cumulative, provides: "that no action taken by the controller or the attorney general *shall be or be construed to be an election on the part of the State or any of its officers to pursue* any remedy hereunder to the exclusion of any other remedy for which provision is made in this act." (Italics added.)

It seems to us, from a reading of paragraph 2 of section 4 of the act, which directs the controller to seize any property, real or personal, used by the distributor in the operation of his business, sell the same, and out of the proceeds of such sale pay the taxes and penalties due "and any and all costs that may have been incurred on account of such seizure and

sale'' that thereby there arose an ''obligation'' upon the part of the distributor to pay such costs. And certainly such ''obligation'' arises out of the Motor Vehicle Fuel Tax Act and is brought into existence because of tax delinquencies on the part of the distributor under the act. To us the conclusion seems inescapable that the ''obligation'' to pay costs of seizure, whether such seizure proceeds to sale or not is an obligation of the taxpayer and that it arises out of the act. Such being the case, manifestly, under the terms of the bonds herein, the defendant sureties are liable.

We are not unmindful of the rules of statutory interpretation which prescribe that taxing statutes must be strictly construed in favor of the taxpayer, and that where the language of the statute is susceptible of two constructions, one of which would render it reasonable, fair and harmonious with its manifest purpose, and another which would be productive of absurd or unjust consequences, the reasonable construction will be adopted. ■ To us, however, it seems clear that the intention of the Legislature, as evidenced by the language of the statute, was to make the costs of the seizure and sale of a delinquent taxpayer's property an ''obligation'' of such taxpayer to be borne by him. To hold otherwise would mean that in the event a sale of the seized property did not for any reason take place, the costs incurred in proceeding against the delinquent taxpayer, who is himself at fault because of his own conduct in failing to discharge his duty to pay taxes, would be thrust upon the taxpaying public. That such a situation was contemplated by the Legislature does not seem reasonable to us, and to give the statute such a construction would serve to defeat the tax plan provided for in the act. On the other hand, to hold that the costs incurred by the State Controller in pursuing the remedy of seizure is an ''obligation'' of the distributor taxpayer ''arising out of this act'' would, in our judgment, make the application of the tax act practicable, fair and reasonable; and such construction should therefore be adopted.

From what we have herein said, it follows that the trial court erred in granting the motion to strike paragraph VI of appellant's complaint which contained allegations relating to the seizure of the distributor's property and the costs incurred by the State Controller in pursuing such remedy.

That portion of the judgment from which this appeal was

specifically taken is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

York, P. J., and Doran, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied August 10, 1944. Edmonds, J., and Schauer, J., voted for a hearing.